UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

RICHARD C. HUNT,                    )
                                    )
            Plaintiff,              )        C.A. No. 04-1417 ***
                                    )
        v.                          )
                                    )
FIRST CORRECTIONAL MEDICAL          )        JURY OF 12 DEMANDED
SERVICES, et al.,                   )
                                    )
            Defendants.             )

## RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Defendant First Correctional Medical hereby requests that the Motion by the

Plaintiff for a Temporary Restraining Order be denied for the following reasons:

1.      Plaintiff filed the above referenced Motion on October 22, 2007. The Motion

        appears to be in error. On October 11, 2004 plaintiff filed a similar Motion in

        this Court docketed as 04-cv-01357-KAJ a copy of this docket is attached as

        Exhibit A. As evidenced by the docket sheet this case was dismissed on

        December 13, 2004.

2.      On October 18, 2007 plaintiff was deposed by defendant First Correctional

        Medical and by the state defendants. During the course of the deposition the

        plaintiff indicated that he had a number of documents that he had not turned

        over to the defendants. In the course of the deposition the defendants

        requested  those documents be turned over to them. See relevant portions of

        the deposition transcript attached as Exhibit B. It appears from the Certificate

        of Service attached to the Motion for Temporary Restraining Order that the

plaintiff was merely responding to our Request for Production of Documents. Not only did he attach the Motion for Temporary Restraining Order, but he attached a number of other documents that were requested during the course of the deposition.

3.    From the face of this document it appears that plaintiff mistakenly styled his response to Request for Production as a Motion for Temporary Restraining Order, therefore the Motion should be denied.

4.    In the alternative, if the Court believes that this is a true request for a Restraining Order the Motion should be denied because the plaintiff has failed to meet any of the requirements necessary for a Court to grant a Motion for a Temporary Restraining Order.  A Restraining Order is an extraordinary remedy. *NutraSweet Company  v. Bit-Mar Enters.,Inc.,* 176F.3d 151,153 (cir. 1999).  There are full requirements that have been outlined by the Third Circuit that a Court has to consider when deciding to grant a Temporary Restraining Order:

(1) Success on the Merits,

(2) Irreparable harm to the moving party,

(3) The harm to the non-moving party will not greater than the relief sought, and

(4) The public interest.  *Rogers v. Corbett,* 468F3d 188,192, (3d Cir. 2007) *(admitted).* as the burden rests with the moving parties to prove all of these requirements.  *P.C.*

*Yonkers, Inc. v. Celebrations The Party & Seasonal*

*Superstore LLC* 428F F3d 504, 508 (3d Cir. 2005).

5.      If, in this, the plaintiff is seeking a Temporary Restraining Order he has not

met his burden.  He has not shown that first of all there would be likelihood of

success on the merits.  He is seeking relief for a medical problem that was

addressed in the year 2004.  The issue is moot.  The plaintiff has shown no

irreparable harm because the plaintiff received the medical treatment he

desired.  As to the other requirements plaintiff has not even made a showing

that such relief is necessary and therefore he has not met the requirements.

On its merits the plaintiff's Motion should also be denied.

**WHEREFORE,** defendant First Correctional Medical requests the Court deny

Plaintiff's Motion for Temporary Restraining Order.

**HECKLER & FRABIZZIO, P.A.**

/s/Daniel L. McKenty
Daniel L. McKenty, *DE Bar No.
2689*
Gerald J. Hager, *DE Bar No. 4097*
800 Delaware Avenue, Suite 200
PO BOX 128
Wilmington, DE 19899
Attorney for Defendant

Date:  November 12, 2007

File No.  17860/370417

## UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

RICHARD C. HUNT,                      )
                                     )
                Plaintiff,           )        C.A. No. 04-1417 ***
                                     )
        v.                           )
                                     )
FIRST CORRECTIONAL MEDICAL           )        JURY OF 12 DEMANDED
SERVICES, et al.,                    )
                                     )
                Defendants.          )

## ORDER

By **ORDER** of the **COURT** having considered plaintiff's Motion for Temporary

Restraining Order, and defendant First Correctional Medical response thereto:

The **MOTION** is hereby denied.

_____
J.

DATE:

File No. 17860/370422

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

RICHARD C. HUNT,                    )
                                    )
                Plaintiff,          )        C.A. No. 04-1417 ***
                                    )
        v.                          )
                                    )
FIRST CORRECTIONAL MEDICAL          )        JURY OF 12 DEMANDED
SERVICES, et al.,                   )
                                    )
                Defendants.         )

## CERTIFICATE OF SERVICE

I certify that, on this date, a copy of this Response to Plaintiff's Motion for

Temporary Restraining Order was served upon the following individuals:

*Via First Class Mail*
Richard C. Hunt
SBI# 274714
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

*Via Electronic Service*
Eileen Kelly, Esquire
Department of Justice
820 N. French St., 6th Fl.
Wilmington, DE 19801

**HECKLER & FRABIZZIO, P.A.**

/s/Daniel L. McKenty
Daniel L. McKenty, *DE Bar No.*
Gerald J. Hager, *DE Bar no. 4097*
800 Delaware Avenue, Suite 200
PO BOX 128
Wilmington, DE 19899
Attorney for Defendant

Date: November 12, 2007
File No. 17860/370424

**EXHIBIT A**

CLOSED

# U.S. District Court
## District of Delaware (Wilmington)
### CIVIL DOCKET FOR CASE #: 1:04-cv-01357-KAJ

Hunt v. Taylor, et al
Assigned to: Honorable Kent A. Jordan
Demand: $0
Related Case: 1:06-cv-00324-***
Case in other court: USDC/DE, 04cv1349UNA
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 10/13/2004
Date Terminated: 12/13/2004
Jury Demand: None
Nature of Suit: 555 Prisoner: Prison Conditions
Jurisdiction: Federal Question

**Plaintiff**

**Richard C. Hunt**

represented by   **Richard C. Hunt**
SBI#274714
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977
PRO SE

V.

**Defendant**

**Stan Taylor**
*Commissioner of Corr.*

**Defendant**

**Warden Rapheal Williams**

**Defendant**

**First Corr. Medical**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/13/2004 | 1 | MOTION by Richard C. Hunt with Proposed Order for Temporary Restraining Order (mwm) (Entered: 10/14/2004) |
| 10/20/2004 | 2 | CASE assigned to Judge Kent A. Jordan . Notice to all parties. (rjb) (Entered: 10/20/2004) |
| 10/25/2004 | 3 | ORDER - assessing $150.00 filing fee and requesting pltf to submit an application to proceed w/out prepayment of fees and a certified copy of his trust fund account statement. Failure to submit items w/in 30 days will result in dismissal w/out prejudice. Set Notice of Compliance deadline to 11/24/04 for Richard C. Hunt ( signed by Judge Kent A. Jordan ) copies to Pltf w/Mag. Consent Form (rwc) (Entered: 10/26/2004) |

| 10/25/2004 |   | FILING FEE $ 150.00 assessed. (rwc) (Entered: 10/26/2004) |
|---|---|---|
| 12/13/2004 | 4 | Order of Dismissal for Failure to Prosecute. Pltf has failed to submit an Application to Proceed in forma pauperis and certified trust account statement as directed per Order [DI#3]. ( signed by Judge Kent A. Jordan ) copies to: Pltf (rwc) (Entered: 12/14/2004) |
| 12/13/2004 |   | Case closed per DI#4. (rwc) (Entered: 12/14/2004) |

<table>
<tr><td colspan="5" align="center"><strong>PACER Service Center</strong></td></tr>
<tr><td colspan="5" align="center"><strong>Transaction Receipt</strong></td></tr>
<tr><td colspan="5" align="center">11/12/2007 11:48:11</td></tr>
<tr><td><strong>PACER Login:</strong></td><td>wm0093</td><td><strong>Client Code:</strong></td><td colspan="2"></td></tr>
<tr><td><strong>Description:</strong></td><td>Docket Report</td><td><strong>Search Criteria:</strong></td><td colspan="2">1:04-cv-01357-KAJ Start date: 1/1/1970 End date: 11/13/2007</td></tr>
<tr><td><strong>Billable Pages:</strong></td><td>1</td><td><strong>Cost:</strong></td><td colspan="2">0.08</td></tr>
</table>

United States District Court of
Delaware In and Newastle County, State of Delaware

Richard C. Hunt
PETITIONER

V

Commissioner of Corr. Stan Taylor

Warden Rapheal Williams

First Corr. Medical
DEFENDANTS

CA04-1417 xxx



FILED

OCT 15 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## Motion For Temporary Restraining Order

Comes now petitioner Richard C. Hunt
Persuing to Federal Rules and Regulations.
and Moves for this Court to Issue a order
Compaling the Defendants To provide Immediate
medical attention as Indicated Here in.

Richard C. Hunt
Petitioner
10.11.04
Date

1a

United States District Court District Of
Delaware In and Newcastle County, State Of Delaware

Richard C. Hunt
PETITIONER

V

Commissioner Of Corr. Stan Taylor

Warden Rapheal Williams

First Corr. Medical

DEFENDANTS

Temporary
Restraining
Order

It Is Ordered
On This Day ——— Of Oct. 2004

Is ordered that Defendants as of
the above date provide and comply with
the following within 7 days.

1. Have the Petitioner taken to the nearest
Hospital For medical care

2. Such care is to be documented and
the results of medical care and docume
-ntation is to be provided to petitioner
and this court within time stated.

The Honorable ———
The united states District Court
Lock Box 18
844 N. King street
Wilmington, Delaware 19801

1b

Delaware Center for Justice
100 West 10th Street, Suite 905
Wilmington, DE 19801

## Adult Offender Services Program

Date: January 21, 2005

Richard Hunt # 274714
Howard R. Young Correctional Inst.
P.O. Box #9561
Wilmington, DE 19809

Dear Mr. Hunt:

This is to acknowledge receipt of your letter.  After careful review of your letter, the following decision has been reached:

☐ We do not deal with the issue(s) in your letter

☐ We advise you to contact your institutional medical provider

☐ Provide additional information on the matter for follow up

☐ Contact your Counselor at the institution for help and guidance

☐ We will contact you upon further investigation and follow up

☐ File a grievance using the internal 4.4 Grievance Procedure

☐ Requested information enclosed

☑ **Other: After reviewing your case it is apparent that DCJ will not be able to address your concerns of why treatment was delayed. However, it is my intent to monitor your current grievance (BGO level) to ensure it is in accordance with the 4.4 grievance policy and procedures.**

Thank you for your interest in our agency.

Sincerely,

Nikita Y. Robins
*Case Manager, Adult Offender Services*

## Certificate of Service

I, _Richard Hunt_ , hereby certify that I have served a true
And correct cop(ies) of the attached: _Production of Documents_
_And things to Defendants_ upon the following

parties/person (s):

TO: _Catherine Damavandi_
_Deputy Attorney General_
_Carvel State office building_
_820 North French Street 6th floor_
_Wilmington, De. 19801_

TO: _Office of the Clerk_
_United States District Court_
_844 N. King Street Lockbox 18_
_Wilmington, Delaware_
_19801-3570_

TO: _Gerald Hager_
_Heckler & Frabizzio_
_800 Delaware Avenue_
_Suite 200_
_P.O. Box 128_
_Wilmington, De. 19899_

TO: _____
_____
_____
_____
_____
_____

BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this _22_ day of _October_ ,200_7_

ICHARD HUNT
274714    UNIT 19 A #4

ARE CORRECTIONAL CENTER
DDOCK ROAD
IA, DELAWARE 19977

LEGAL MAIL



Office of the Clerk

United States District Court
844 N. King Street Lockbox 18
Wilmington, Delaware
19801-3570

LEGAL MAIL

**EXHIBIT B**

Richard C. Hunt

Page 64

1  to put in because they didn't bring all my stuff down here

2  and a lot of my paperwork got took.  And what I was

3  looking for was my medical, like I wrote my medical record

4  like for myself.

5      Q.    You took notes?

6      A.    Every day.  Yeah, I took notes every day what

7  they told me.  I had that in my room.  I wrote everything

8  they said down and I really couldn't get copies and they

9  didn't even send -- they didn't send it.  They sent it

10 real late.  You know what I mean?  So I really haven't got

11 copies of it.  I just got it so they -- of my medical

12 history.

13     Q.    So you're saying that while you were in the

14 infirmary you took your own notes about what was going on.

15     A.    Yes.  I asked him everything.

16     Q.    Do you have that now?

17     A.    Yes.  Not on me.  It's --

18     Q.    Could you provide Ms. Damavandi with a copy of

19 that?

20     A.    Yeah.

21           MR. HAGER:  And me too, please.

22           THE WITNESS:  Yeah; because I wrote

23     everything down what they told me.  Every time I just

24     -- slow it back.  So I'm in the infirmary.  I stayed

25     there till like -- like December '04 because I had to

Richard C. Hunt

Page 65

1      get wired up so she said the 20th -- Dr. Diane

2      Hernandez said the 20th she put in the causaltation

3      [sic] whatever it's called.

4   BY MS. KELLY:

5      Q.      Consultation request?

6      A.      Yeah.  To go out to the hospital.  So that was

7   like the same day she put it in and she was like, Well,

8   it's up to security to let you out to take you to the

9   hospital, it's up to security.  So and this was the 20th,

10  September 20th.  So I wrote -- if you look I got a medical

11  grievances asking them why they're not sending me to --

12  sending me to the outside hospital.

13     Q.      I'm asking you do you have anything?

14             MR. HAGER:  Pardon me?

15             THE WITNESS:  I'm asking do you have

16     anything on me putting in grievances --

17             MS. KELLY:  I have a grievance here --

18             THE WITNESS:  -- October I think the 8th,

19     around that time because that whole time I'm asking

20     them is you all going to get me to the hospital, is

21     you going to get me to the hospital?

22  BY MS. KELLY:

23     Q.      What were you told?

24     A.      I was told that you're waiting on a -- it's up

25  to security to let you go.

Page 67

```
 1        grievance dated 10/14/04 and as an Exhibit but the
 2        number is cut off at the bottom of the copy that I
 3        have.
 4                MS. KELLY:  That's attached to the
 5        Complaint.
 6                MR. HAGER:  Attached to the Complaint,
 7        correct.
 8   BY MS. KELLY:
 9        Q.    Do you have that?
10        A.    Because I know I got it.  I'm saying I know I
11   got it but I just can't --
12        Q.    If you can't find it you can send it to me
13   later if you find it later.
14        A.    I know you have it already because I put it --
15   I put it with my initial Complaint.
16                MS. KELLY:  Maybe it's --
17                MR. HAGER:  It's not in the Complaint that
18        I ever seen.
19                THE WITNESS:  Like they violating my
20        constitutional right.
21                MS. KELLY:  It might be with the . . .
22                THE WITNESS:  Because was I telling them
23        that they not, you know, they not letting me --
24        they're not taking me out to the hospital because my,
25        you know what I mean, it took them a whole month to
```

Richard C. Hunt

Page 68

1     get me to the hospital.  From -- it happened

2     September 17th, they found out it was broke the 20th,

3     they didn't get me out till the 18th of October to

4     get my jaw wired.

5              This is not even half the papers that I

6     got.  I don't know why I don't have it in here.

7              MS. KELLY:  I'm not saying that I

8     definitely don't have it, but I can't find if I have

9     it.  I don't see it attached to the Complaint.

10             MR. HAGER:  No, I didn't see it attached to

11    my Complaint either.

12             MS. KELLY:  No.  If you can't find it now

13    --

14             THE WITNESS:  Yeah.  I'll find it for you.

15             MS. KELLY:  -- then you can send it to me

16    and to Ms. Catherine Damavandi and to Mr. Hager, that

17    would be good, if you find it.

18             THE WITNESS:  Because I know I wrote it

19    because if I got it it was attached with this.  These

20    is like old motions for appointment of counsel so,

21    most of these.  But I got it.  It ain't with me right

22    now.  I got it so I'll send that to you.

23             MS. KELLY:  To Ms. Damavandi.

24             MR. HAGER:  And to me, please, Gerald

25    Hager.

Richard C. Hunt

Page 78

1   while longer?

2      A.      Yeah, yeah; because he said I might need more

3   surgery, possibly more surgery or something.

4      Q.      Once your jaw -- once you could move your jaw

5   again or chew a little bit then you were sent back to?

6      A.      Population.  I went to 1C.

7      Q.      By then you were sentenced; is the right?

8      A.      Yeah.  I got sentenced the 22nd of September.

9   I wasn't sentenced when it happened though.

10     Q.      From the time you had your procedure in

11  October till December what kind of things were they doing

12  for you in the infirmary?

13     A.      They were just -- D'Amico prescribed me

14  Tylenol 3.  Wasn't working so I had to tough it out.

15  Pretty much they wouldn't -- at this time they were, Oh,

16  I'm tired of hearing this because I was complaining.  Yo,

17  you need to get me to the hospital.  So once a person who

18  is, you know, like that in the infirmary it gets on their

19  nerves because they feel as though I can't get him up,

20  security is holding him and why you keep, you know, why

21  you keep asking, you know, to go out.  I'm like because my

22  jaw is broken.  All right, we know your jaw is broken.  We

23  going to send you; we going to send you; we going to send

24  you.  So I put in a restraining order.  I filed a

25  restraining order with the Judge.  I got that too.

Richard C. Hunt

Page 79

1    Q.    What Court was that?

2    A.    Same Court.

3    Q.    District Court?

4    A.    Yeah.  And I asked him for ten days for them

5    to get me to the hospital and this was the -- I think it

6    was -- I put in a thing, I put it in -- I'm not sure but

7    got it.  I know I got it.  I put it in and actually ten

8    days to get me to the hospital.  So it was like they got

9    me out that like 10th, 7th day, one of them, they took me

10   to the hospital.

11   Q.    So you asked -- you filled a petition --

12   A.    Yeah; restraining order.

13   Q.    -- with the court and how long after that were

14   you taken to Dr. D'Amico?

15   A.    Right in between that seven to ten days.

16   Q.    That case was called Hunt versus who?

17   A.    State of Delaware.

18   Q.    Okay.

19   A.    I ain't get -- I didn't get a response back.

20   It was just that it happened that fast.  You know, they

21   got me out within that time because I kept threatening

22   them.  I'm going to file a restraining order on you.  You

23   know what I mean?  You're violating my constitutional

24   rights and, you know, stuff like that so they was getting

25   tired of me so they was like, you know, dealing with him.

Page 102

1  got plenty of copies of everything that I did and that's
2  from the 17th.
3         I didn't know you all was coming so I really I
4  couldn't bring everything anyway but this was the only
5  thing I could grab.  And this is like the whole seven file
6  that I have but I got -- due to this I can't even -- I
7  couldn't bring everything, pull everything out to show
8  you.
9      Q.    Mr. Hunt, we sent you a Request for Production
10  of documents along with our Interrogatories and you
11  haven't responded to that yet and that would be like a
12  copy of all the documents that you have.  Are you
13  intending to respond to that?
14     A.    Yes.  I'm -- I can't.  It's hard to do
15  anything.  I'm locked in.  They -- put a request in for
16  legal, it takes a lot of time.
17     Q.    I'm going to go through your Interrogatories.
18  Seems in all your Answers your main complaint against
19  First Correctional is that you weren't treated in a timely
20  manner.
21     A.    Correct.
22     Q.    And you're not complaining about the work that
23  Dr. D'Amico did, are you?
24     A.    No.
25     Q.    Who exactly told -- do you recall any names of

1   go check your file, Oh, he's got a active lawsuit.  We're

2   not dealing with him because they don't want to get

3   involved.  They don't want to be a part of anything so

4   they had talked to you, Oh, you all right?  No, I'm not

5   all right.  What's the problem?  You tell them and then

6   it's, all right, we'll be back.  You know what I'm saying?

7   For a whole two weeks.

8        Q.     So you're saying once anybody in the prison

9   who is an employee, an official, works for medical, works

10  for the Department of Correction, once they find out you

11  filed a lawsuit they don't -- they treat you differently?

12       A.     Yes.  They want to stay away from you.  They

13  don't -- you pretty much, it's not -- like I'm not getting

14  involved in that.

15       Q.     But you say you've got this treatment, the

16  same type of treatment when you were in the infirmary

17  between the time that you were put in the infirmary

18  September 2004 through the time you went to see

19  Dr. D'Amico?

20       A.     Yeah.

21       Q.     You hadn't filed a lawsuit at that time, had

22  you?

23       A.     I filed it in October.  I filed them I think

24  -- I filed them in I think in -- I think in October but

25  the one for -- against Emig and them was dismissed because

1    I failed to put in I think it was a US Marhsal to put in

2    the form so I had to refile that.  But the medical you all

3    didn't even respond until sometime I think this year.

4        Q.    But you -- between the time you were first --

5    you first went into the infirmary for this incident --

6        A.    I waited till -- I waited till they was going

7    to respond back to my grievances and once I knew they

8    wasn't responding back to anything that's when I filed.  I

9    made sure that I tried to exhaust my options first with

10   everything and as you can see through the amount of the

11   paperwork I got they didn't have -- they just treated it

12   was like nothing happened.

13       Q.    Have any of your grievances been resolved?

14       A.    No, I don't resolve them.  I try to keep

15   going, like keep them -- but we can't do nothing.  You

16   already got -- they basically told me you already got what

17   you wanted.  You already got your jaw wired, now be quiet.

18       Q.    Who told you that?

19       A.    Basically Nurse Diane.  I gotta respond back

20   to you as far as like all the documents that I got from

21   the medical so I'll get copies and send you all them.

22              MR. HAGER:  Please, please.

23              THE WITNESS:  I got to send you that too.

24       Right?

25              MS. KELLY:  Right.