**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RICHARD HUNT | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1417-*** |
| | ) | |
| FIRST CORRECTIONAL MEDICAL | ) | |
| SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF FACTS**

1. At all times relevant to this case, *pro se* plaintiff Richard C. Hunt ("Plaintiff") was an inmate incarcerated at the Howard R. Young Correctional Institution ("HRYCI"), formerly known as the Multi-Purpose Criminal Justice Facility ("MPCJF") or "Gander Hill" in Wilmington, Delaware. Plaintiff first filed a complaint against First Correctional Medical Services on November 3, 2004, alleging negligence in the treatment of his broken jaw. D.I.2. On December 1, 2004, Plaintiff moved to amend his complaint to add additional Defendants Stan Taylor (Delaware Commissioner of Correction) and Raphael Williams (Warden of HRYCI). D.I.6. The motion was granted on September 27, 2005. D.I.7.

2. Plaintiff filed another complaint, 06-cv-324-***, on May 18, 2006, against Delaware Department of Correction Officers Brian Emig and D'Anglo. D.I.2 of 06-cv-324-***. Plaintiff alleged 42 U.S.C. §1983 violations against both officers. The claims

against Defendant D'Anglo were dismissed on June 27, 2006. D.I.7 of 06-cv-324-***. On April 23, 2007, Civil Action No. 06-324-*** was consolidated with the instant matter. D.I.31 of 06-cv-324-***. Civil Action No. 04-1417-*** was then designated as the case number for both complaints. All references herein to docket item numbers are to Civil Action No. 04-1417-***, unless otherwise noted.

      3.      Plaintiff claims that State Defendant Brian Emig broke his jaw during a shake down of Plaintiff's cell on September 17, 2004, then harassed and taunted Plaintiff while Plaintiff was housed in the prison infirmary. D.I.2 of 06-cv-324-***. Plaintiff alleges that First Correctional Medical Services was negligent because Plaintiff had to wait too long to receive treatment from a doctor outside the hospital for his jaw. With respect to State Defendants Stan Taylor and Raphael Williams, Plaintiff claims that they failed to intervene on his behalf for expedited medical treatment. D.I.6. This is the State Defendants' Memorandum of Points and Authorities in support of their Motion for Summary Judgment.

## MEMORANDUM OF LAW

The Court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of proof is on the moving party to demonstrate the absence of material issues of fact, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. However, once the moving party advances evidence in support of its contentions, the nonmoving party must go beyond the pleadings and introduce

affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In this case, because there is no genuine issue of material fact, State Defendants are entitled to judgment as a matter of law.

**I.  STATE DEFENDANTS STAN TAYLOR AND RAPHAEL WILLIAMS CANNOT BE HELD LIABLE UNDER THE DOCTRINE OF *RESPONDEAT SUPERIOR*.**

The Third Circuit has held that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). *See also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Personal involvement can be shown through assertions of personal direction, or actual knowledge and acquiescence. However, such assertions must be made with particularity. *Rode*, 845 F.2d at 1207.

In this case, Plaintiff's theory of liability is premised on the doctrine of *respondeat superior* because State Defendants Stan Taylor and Raphael Williams hold supervisory positions. Claims against these Defendants are not addressed with particularity; Plaintiff's one-page "Amendant [sic] Statement of Claim," D.I.6., contains the only one allegation against Stan Taylor and Raphael Williams: "Corrections Commissioner (Stan Taylor) and Warden (Raphael Williams) was [sic] aware of my medical situation and elected not to intervene."

Plaintiff has not alleged any specific, wrongful conduct against State Defendant Stan Taylor. There are no allegations regarding his personal involvement in this matter.

In Plaintiff's deposition of October 18, 2007, Plaintiff was specifically asked why Stan Taylor was named in his complaint. *Exhibit A, Excerpted Deposition of Richard C. Hunt.* Plaintiff replied that Defendant Stan Taylor was named in the lawsuit because "through other case law that I've read, you know, I, you know, you name them….You go from the top to the bottom and you basically—sue basically." *Exhibit A at p. 93.* Plaintiff maintains that prior to the filing of his lawsuit, he wrote to Defendant Stan Taylor. *Exhibit A, p. 92.* However, Plaintiff's correspondence was not about his medical treatment; rather, Plaintiff "just wrote to him about the assault" involving State Defendant Brian Emig. *Id.* Plaintiff further testified that he wrote to Stan Taylor because "I was told, you know, by other inmates and a couple guards that—to write him." *Id.*

Similarly, Plaintiff does not allege any specific, wrongful conduct against State Defendant Raphael Williams. Plaintiff testified that he named Raphael Williams because "Raphael Williams the warden, he was the warden. I'm in his care." *Id. at 93.* Plaintiff testified that he wrote to Defendant Williams once. *Id.* Plaintiff attached Defendant Williams' response to Plaintiff's singular inquiry as Exhibit A-2 to his complaint. D.I.2. This letter from Defendant Raphael Williams to Plaintiff is dated September 29, 2004, twelve (12) days after the alleged injury to Plaintiff's jaw. Defendant Williams' letter is addressed to "Richard Hunt, 274714, Infirmary." Thus, from the face of Defendant Raphael Williams' letter, it is evident that Plaintiff was already receiving medical treatment during this time period. In fact, Plaintiff testified that he was admitted to the prison infirmary on September 20, 2004 after his jaw was x-rayed. *Exhibit A at 62.* At that time, Plaintiff was immediately prescribed a liquid diet and given antibiotics for his jaw. *Id.* Plaintiff remained at the infirmary until December 2004. *Id. at 64.* Therefore,

Plaintiff cannot demonstrate that he failed to receive medical treatment from September 20, 2004 until December 2004 when he was remained at the prison infirmary.

Defendant Raphael Williams' September 29, 2004 letter states that Hunt's "recent correspondence, to the office of the Commissioner, has been forwarded to this office for response and/or corrective action. Your allegations are under investigation." Plaintiff offers no particular allegations in support of a claim of deliberate indifference against Defendant Williams and shows no close causal link between Defendant Williams' conduct and Plaintiff's alleged injury.

In the absence of any allegations that State Defendants personally participated in the alleged wrongful conduct, Plaintiff has failed to state a claim and State Defendants Stan Taylor and Raphael Williams are entitled to judgment as a matter of law. *See Murphy v. Kearney*, 2004 WL 878467 (D. Del. April 19, 2004) (attached as Exhibit B) (prison warden entitled to summary judgment where there were no allegations of personal involvement); *Gregory v. PHS Inc.*, 2001 WL 1182779 (D. Del. Sept. 21, 2001) (attached as Exhibit C) (Department of Correction Commissioner and prison warden entitled to summary judgment where there were no specific allegations of misconduct).

## II. UNDER THE DOCTRINE OF QUALIFIED IMMUNITY, STATE DEFENDANTS CANNOT BE HELD LIABLE IN THEIR INDIVIDUAL CAPACITIES.

State Defendants Stan Taylor and Raphael Williams are entitled to qualified immunity on Plaintiff's Eighth Amendment claim of deliberate indifference. To determine whether a state official is entitled to qualified immunity, the court must conduct a two-part inquiry:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the

> party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz,* 533 U.S. 194, 201 (2001). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201.

In the case at bar, State Defendants Stan Taylor and Raphael Williams did not delay or bar Plaintiff's access to medical care. The Courts have held that, as long as some care is provided, there is no constitutional violation. As mentioned *supra,* Plaintiff testified that he was admitted to the prison infirmary on September 20, 2004, and was immediately prescribed a liquid diet and given antibiotics. *Exhibit A at 62*. Only *after* Plaintiff was admitted to the infirmary did he write to Defendants Stan Taylor and Raphael Williams. Plaintiff remained at the infirmary until December 2004. *Id. at 64*. Therefore, reasonable officials in State Defendants' Taylor and Williams' circumstances could not know that their conduct would present a constitutional violation.

Therefore, State Defendants Stan Taylor and Raphael Williams are entitled to qualified immunity as a matter of law and cannot be held liable to Plaintiffs in their individual capacities.

### III.    UNDER THE ELEVENTH AMENDMENT, STATE DEFENDANTS CANNOT BE HELD LIABLE IN THEIR OFFICIAL CAPACITIES.

"[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." *Id.* at 101 (*quoting Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." *Id.* (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (*quoting Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

In this case, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, under the Eleventh Amendment, State Defendants cannot be held liable in their official capacities.

## IV. PLAINTIFF'S CLAIMS ARE BARRED BY THE PRISON LITIGATION REFORM ACT.

Plaintiff in this action brings a *pro se* complaint, filed while he was incarcerated, regarding the conditions of his confinement. The Plaintiff alleges claims under 42 *U.S.C.* § 1983. The Prison Litigation Reform Act ("PLRA") of 1995 became effective on April 26, 1996, and amended a variety of statutory provisions governing litigation by prisoners, specifically including those brought under 42 *U.S.C.* §1983. Accordingly, the PLRA is applicable to this matter.

The PLRA contains an "exhaustion of remedies" requirement. 42 *U.S.C.*

1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

A plaintiff must exhaust administrative remedies even where the grievance process would not provide him with the remedy that he is seeking in his federal court action. *Booth v. Churner,* 206 F.3d 289, 294-295 (3d Cir. 2000), *aff'd,* 532 U.S. 731 (2001). *See also Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000) (holding that there is no "futility" exception to the prisoner exhaustion requirement).

The Third Circuit has held that the PLRA includes a "procedural default" component. Accordingly, an inmate is required to follow the grievance process through every appellate step in order to properly exhaust administrative remedies. *See Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (The PLRA's "goals are obviously served by a procedural default rule because such a rule prevents an end-run around the exhaustion requirement").

Here, Plaintiff alleges in both of his complaints that he did not exhaust his administrative remedies. In the complaint for Civil Action No. 04-1417-***, he states that he filed a grievance in connection with his matter, which was "Still Pending." D.I.2. In Civil Action No. 06-324-***, although Plaintiff alleges that his administrative remedies were exhausted, he describes his "request for investigation to be conducted" as having "no reply on results." D.I.2 of 06-324-***. Therefore, in both cases, taking the facts as alleged by the Plaintiff as true, it appears that the Plaintiff opted to file lawsuits instead of pursuing his administrative remedies.

A plaintiff procedurally defaults when he fails to carry the grievance process to its administrative conclusion. Thus, Plaintiff failed to exhaust his administrative remedies and is therefore barred from pursuing this action. For this reason, State Defendants are entitled to summary judgment.

## V.   PLAINTIFF'S CLAIM FOR VERBAL HARASSMENT AND ABUSE AGAINST DEFENDANT BRIAN EMIG IS NOT A VALID CLAIM UNDER 42 U.S.C. § 1983.

Plaintiff makes a harassment claim against Defendant Brian Emig for actions occurring while Plaintiff was housed in the prison infirmary. In his complaint, Plaintiff alleges that "on two more occasions I was harassed and threaten [sic] in the infirmary by C/O Emig". D.I.2 of 06-cv-324-***. Plaintiff attaches what appears to be his handwritten grievance for this taunting as Exhibit B-2 of his complaint. *Id.* Plaintiff maintains that Defendant Brian Emig laughed at him, called him names and on another occasion, stared at Plaintiff and gave him dirty looks. *Id.*

Plaintiff fails to state a constitutional violation against Defendant Brian Emig. "Verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979). *Accord, Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir.1985); *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983). *See also Ellingburg v. Lucas,* 518 F.2d 1196, 1197 (8th Cir.1975) (holding that damages for defamation, allegedly incurred when defendant called plaintiff by an obscene name, are not recoverable under § 1983). Likewise, receiving stares and "dirty looks" are not a constitutional deprivation. Therefore, taking the facts alleged by Plaintiff as true, he does not establish a constitutional violation that can be remedied by 42 U.S.C. § 1983.

WHEREFORE, for the reasons set forth herein, State Defendants respectfully request that this Court grant summary judgment in their favor.

        **STATE OF DELAWARE**
        **DEPARTMENT OF JUSTICE**

        /s/ Catherine Damavandi
        Catherine Damavandi (ID # 3823)
        Deputy Attorney General
        State of Delaware
        Department of Justice
        820 N. French Street, 6th Floor
        Wilmington, DE 19801
        (302) 577-8400
        Attorney for State Defendants

Dated: December 3, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RICHARD HUNT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C. A. No. 04-1417-*** |
| | ) |
| FIRST CORRECTIONAL MEDICAL | ) |
| SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

*CERTIFICATE OF SERVICE*

I hereby certify that on December 3, 2007, I electronically filed *Defendants' Memorandum of Points And Authorities In Support of Their Motion for Summary Judgment* with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

> Daniel L. McKenty, Esq.
> Heckler & Frabizzio, P.A.
> 800 Delaware Avenue, Suite 200
> Wilmington, DE 19801

I hereby certify that on December 3, 2007, I have mailed by United States Postal Service, the document to the following non-registered participant:

> Richard C. Hunt, SBI #274714
> Delaware Correctional Center
> 1181 Paddock Road
> Smyrna, DE 19977

> STATE OF DELAWARE
> DEPARTMENT OF JUSTICE
>
> /s/ Catherine Damavandi_____
> Catherine Damavandi (ID # 3823)
> Deputy Attorney General
> State of Delaware Department of Justice
> 820 N. French Street, 6th Floor
> Wilmington, DE 19801
> (302) 577-8400
> Attorney for State Defendants