IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD HUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1417-GMS |
| | ) (consolidated with 06-324-GMS) |
| FIRST CORRECTIONAL MEDICAL | ) |
| SERVICES, STAN TAYLOR, DEPUTY | ) |
| WARDEN RAPHAEL WILLIAMS, and | ) |
| BRIAN EMIG, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff, Richard C. Hunt ("Hunt"), a prisoner incarcerated at the Sussex Correctional Institution ("SCI"), Georgetown, Delaware, filed this lawsuit on November 3, 2004, pursuant to 42 U.S.C. § 1983. (D.I. 2.) An amendment was filed on December 1, 2004. (D.I. 6.) At the time he filed his complaint, Hunt was housed at the Howard R. Young Correctional Institution ("HRYCI"). Hunt filed a second case on May 18, 2006, Civ. No. 06-694-GMS, and the cases were consolidated on April 23, 2007.

Hunt appears *pro se* and was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. He alleges that the defendant Brian Emig ("Emig") used excessive force on September 17, 2004, when Emig hit him and fractured his jaw. (Civ. No. 06-694-GMS, D.I. 2.) Hunt alleges that the defendant First Correctional Medical Services[1] ("FCM") was negligent in its duty to provide him with proper care in a timely manner. He alleges that the defendants Stan

---

[1] The correct name is First Correctional Medical Delaware - LLC. (D.I. 43, ¶ 2.) FCM provided medical services to the DOC from July 1, 2002 through June 30, 2005.

Taylor ("Taylor"), the former commissioner of the Delaware Department of Correction ("DOC"), and Raphael Williams ("Williams"), the former warden at the HRYCI, were aware of his medical situation and elected not to intervene.

Presently before the court are FCM's motion to dismiss and the state defendants' motion for summary judgment. (D.I. 43, 69.) Hunt did not respond to the motions. For the reasons that follow, the court will grant FCM's motion to dismiss, and will grant in part and deny in part the state defendants' motion for summary judgment.

## II. MOTION TO DISMISS

### A. Standard of Review

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *Erickson v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, –U.S.–, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); Fed. R. Civ. P. 8. A complaint does not need detailed factual allegations, however "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations

omitted). The plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. *Id.* (citing *Twombly*, 127 S.Ct. at 1965 n.3). Therefore, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips v. County of Allegheny*, *Id.* at 235 (quoting *Twombly*, 127 S.Ct. at 1965 n.3). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234. Because the plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

**B. Discussion**

FCM moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. More particularly, it argues that the complaint fails to identify any individual who is responsible for the negligence as alleged in the complaint, Hunt failed to submit an affidavit of merit as is required under Delaware in medical negligence claims and did not seek an extension of time to submit said affidavit, and Hunt failed to exhaust his administrative remedies.[2]

Initially the court notes that Hunt does not allege that FCM violated his constitutional

---

[2] The court will not address the issue of administrative remedies as raised in the motion to dismiss since the claims against FCM will be dismissed on other grounds.

rights. Rather, he alleges that it was negligent in its duty to assist him in receiving proper care in a timely manner. In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. Del. Code Ann. tit. 18 § 6801(7). When a party alleges medical negligence, Delaware law requires the party to produce expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury." *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); Del. Code Ann. tit. 18 § 6853. Hunt failed to attach an affidavit of merit to his complaint as is required under Delaware law for healthcare negligence lawsuits. Accordingly, the court will grant FCM's motion to dismiss.

Even if Hunt had alleged that FCM violated his constitutional rights, the mere negligence of prison authorities in and of itself does not violate prisoners' constitutional rights. *See Daniels v. Williams*, 474 U.S. 327, 330-30 (1986)); *see also Walker v. Reed*, 104 F.3d 156, 158 (8th Cir. 1997)(holding that prison officials' simple negligence does not amount to violation of the Eighth Amendment prohibition against cruel and unusual punishment for inhuman conditions of confinement). Allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).

Moreover, when a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med.*

*Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that FCM is directly liable for the alleged constitutional violations, Hunt "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The complaint makes no mention of any individual who allegedly committed medical malpractice, nor did Hunt include an affidavit of merit signed by an expert witness with his complaint as is required. Finally, the complaint fails to state a claim for a medical needs constitutional violation. For the above reasons, the court will grant FCM's motion to dismiss.[3]

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[3]The court notes that Hunt's deposition testimony does not support his claim that FCM was deliberately indifferent to his medical needs. During his deposition Hunt testified that he was injured on September 17, 2004, saw a nurse on September 19, 2004, was x-rayed on September 20, 2004, and admitted to the infirmary on the same day. (D.I. 70, Pl.'s dep. 15-16.) Hunt remained in the infirmary on a liquid diet, underwent surgery in mid-October, and remained in the infirmary until early December. *Id.* at 16-17. "A prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The state defendants move for summary judgment on the grounds that Taylor and Williams cannot be held liable under the doctrine of respondeat superior and they are entitled to qualified immunity, the state defendants cannot be held liable in their official capacities under the

Eleventh Amendment, Hunt failed to exhaust his administrative remedies, and the complaint fails to state a claim for verbal harassment and abuse against Emig.

### B. Respondeat Superior

The complaint alleges that Taylor and Williams were aware of Hunt's medical situation and elected not to intervene. Hunt testified that he named Taylor as a defendant because he wrote to Taylor about the assault by Emig. (D.I. 70, pl.'s dep. 23.) Hunt named Taylor as a defendant because he was the commissioner of the DOC and he named Williams as a defendant because he was the warden. (*Id.* at 24.) Williams responded to Hunt's letter to Taylor. (*Id.* at 23.) Hunt, however, did not write to Taylor or Williams about his medical issues. (*Id.* as 23-24.) Taylor and Williams contend that they are entitled to summary judgment because Hunt has made no showing of their personal involvement and his theory against them is based upon respondeat superior.

As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. *Id.; see Monell v. Department of Social Services* 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting

risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris,* 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women,* 128 Fed. Appx. 240 (3d. Cir. 2005).

Hunt acknowledged during his deposition that he never contacted Taylor or Williams regarding his medical concerns. He also acknowledged that he named Taylor and Williams as defendants based upon their positions as the commissioner of the DOC and warden, respectively. Nothing in the record indicates they were personally involved in Hunt's medical care.[4] And, as discussed, there is no supervisory liability under § 1983. Accordingly, the court will grant Taylor and Williams' motion for summary judgment.[5]

## C. Eleventh Amendment Immunity

The state defendants seek summary judgment on the claims raised against them in their official capacities. The Eleventh Amendment bars suits against states, *see Bolden v. SEPTA*, 953 F.2d 807, 813 (3d Cir. 1991). The State has not waived its immunity from suit in federal court, and although Congress can abrogate a state's sovereign immunity, it did not do so through the

---

[4] The U.S. Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993). The Third Circuit later clarified that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer,* 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

[5] The court will not address the issue of qualified immunity since Taylor and Williams will be granted summary judgment on other grounds.

enactment of 42 U.S.C. § 1983. *Brooks-McCollum v. Delaware*, 213 Fed. Appx. 92, 94 (3d Cir. 2007) (citations omitted). Additionally, claims made against state officials in their official capacities are treated as claims made against the state itself. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71(1989). For the above reasons, the court will grant the state defendants' motion for summary judgment on this issue.

### D. Administrative Remedies

The state defendants argue they are entitled to summary judgment on the grounds that Hunt opted to file lawsuits instead of pursing his administrative remedies as is required by the Prison Litigation Reform Act. ("PLRA").[6] The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199 (2007). Failure to exhaust administrative remedies must be pled and proved by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S.

---

[6]The court will not address the issue as to Taylor and Williams since they will be granted summary judgment on other grounds.

731, 741 n.6 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 84, 90-91 (2006). As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA. *See Woodford*, 126 S.Ct. at 2388. The PLRA does not require the grievance and complaint to be identical because inmates are required to complete the applicable administrative process (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief. *See Booth v. Churner*, 532 U.S. 731 (2001).

The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. *See Spruill v. Gillis*, 372 F.3d 218, 227-28 (3d Cir. 2004); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000); *but see Freeman v. Snyder*, No. 98-636-GMS, 2001 WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met). Delaware Department of Correction ("DOC") administrative procedures provide for a multi-tiered grievance and appeal process. An inmate who wishes to grieve a particular issue must express the grievance in writing within seven calendar days following the incident. The grievance is reviewed by the institutional grievance chair. If the grievance is unresolved, then the inmate is entitled to a hearing before the resident grievance committee. The decision of the resident grievance committee is forwarded to the warden or the warden's designee for review and concurrence. If the resident grievance committee fails to obtain the concurrence of the warden, the inmate is entitled to review of the matter by the bureau grievance officer. An inmate has exhausted all available administrative

remedies once the foregoing is completed. DOC Policy 4.4 (revised May 15, 1998).

The state defendants argue that Hunt failed to exhaust his administrative remedies as to Emig, based upon the allegations in the complaint wherein Hunt describes his "request for investigation to be conducted" as having "no reply on results." (D.I. 70 at 8.) The state defendants omit that Hunt answered yes in response to whether he fully exhausted his administrative remedies and, that when asked the result, he responded N/A. (Civ. No. 06-324, D.I. 2, ¶ II.C.2.) Moreover attached to the complaint is Hunt's grievance complaining of Emig's acts. (*Id.* at ex. A-1.) The response to the grievance regarding the assault by Emig states that Hunt's grievance is "not grievable" because inmates cannot request or demand disciplinary action on staff. (*Id.* at ex. A-3.) Instead, Hunt is told to make a written complaint to Emig's supervisor. (*Id.*)

The state defendants argue that Hunt failed to follow the grievance process to its administrative conclusion, as is required. A review of the record, however, reveals that Hunt exhausted his claims as to Emig. Hunt submitted his grievance regarding the actions of Emig and it was returned as "non-grievable." It is clear from the face of the grievance response that administrative remedies were unavailable to plaintiff (i.e., the issue is non-grievable). No administrative remedy is available and, therefore, exhaustion is not required. Accordingly, the court will deny Emig's motion for summary judgment on the issue of exhaustion of administrative.

### E. Verbal Harassment/Abuse

The complaint does not contain allegations of verbal harassment and abuse, but Hunt attached an exhibit to the complaint wherein Hunt complained that on more than two occasions,

while he was in the infirmary, Emig verbally harassed him and gave him threatening looks. (Civ. No. 06-324-GMS, ex. B-2.) Apparently, out of an abundance of caution, the state defendants move for dismissal on the basis that the allegations do not allege a constitutional violation.

Verbal abuse and harassment do not rise to the level of a constitutional violation. *See Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993); *see also McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights). Similarly, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him). The allegations of verbal abuse and verbal harassmsent are not cognizable under § 1983, and therefore the court will grant the state defendants' motion for summary judgment on this issue.

## IV. CONCLUSION

For the above stated reasons the court will grant FCM's motion to dismiss and will grant in part and deny in part the defendants' motion for summary judgment. The only claim remaining is the excessive force claim against Brian Emig. An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

Feb 4, 2009
Wilmington, Delaware

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD HUNT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-1417-GMS |
| ) | (consolidated with 06-324-GMS) |
| FIRST CORRECTIONAL MEDICAL ) | |
| SERVICES, STAN TAYLOR, DEPUTY ) | |
| WARDEN RAPHAEL WILLIAMS, and ) | |
| BRIAN EMIG, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

At Wilmington this 4Th day of Feb, 2009, for the reasons set forth in the Memorandum issued this date;

1. First Correctional Medical Services' motion to dismiss is **granted**. (D.I. 43.)

2. The defendants' motion for summary judgment is **granted** as to the defendants Stan Taylor and Warden Raphael Williams, the Eleventh Amendment immunity issue, and the verbal harassment/abuse issue and **denied** in all other respects. (D.I. 69.) Stan Taylor and Raphael Williams are **dismissed** as defendants. The clerk of the court is directed to enter judgment in their favor and against the plaintiff at the close of the case.

3. The only claim that remains is the excessive force claim against Brian Emig.

_____
CHIEF, UNITED STATES DISTRICT JUDGE